UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

JANET DEXTER
on behalf of herself and all
others similarly situated,

        Plaintiff,                         Case No. 20-cv-1441

       v.

CARDINAL RIDGE RESIDENTIAL CARE, LLC

        Defendant

**BRIEF IN SUPPORT OF JOINT MOTION
FOR PRELIMINARY SETTLEMENT APPROVAL**

Plaintiff, Janet Dexter, on behalf of herself and all others similarly situated, and

Defendant, Cardinal Ridge Residential Care, LLC, submit this Brief in Support of their Joint

Motion for Preliminary Settlement Approval.

## **<u>INTRODUCTION</u>**

The parties' Settlement Agreement, titled "Settlement Agreement & Release," attached as

Exhibit A to the parties' Joint Motion for Preliminary Settlement Approval, (ECF No. 19-1), is

fair, reasonable, and adequate because it fully satisfies this Court's criteria for class and

collective action settlements.

As such, the parties respectfully request that this Court:

1. Approve the parties' Settlement Agreement, (ECF No. 19-1), as a fair, reasonable, and adequate resolution of a bona fide dispute under the FLSA and the WWPCL;

2. For settlement purposes only, certify a class action under Federal Rule of Civil Procedure 23;

3. For settlement purposes only, certify a collective action pursuant to the FLSA;

4. Appoint Plaintiff, Janet Dexter, as Class Representative;

5. Appoint Plaintiff's Counsel, Walcheske & Luzi, LLC, as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

6. Approve the parties' Notice Packet, attached as Exhibit A to the Settlement Agreement, (ECF No. 19-1), for distribution to all Collective and Class members;

7. Find that the Notice Packet to be sent to all Collective and Class members constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to Collective and Class members in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution;

8. Order that each Collective member who wishes to be included in the FLSA Collective must opt-in per the instructions set forth in the Notice Packet, and that their response must be postmarked within forty-five (45) days of mailing of the Notice Packet;

9. Order that any Collective member who has properly and timely opted-in to the FLSA Collective shall be bound by the Agreement when the Court issues a Final Order Approving Settlement;

10. Order that each Class member who wishes to be excluded from the WWPCL Class must opt-out per the instructions set forth in the Notice, and that their response must be postmarked within forty-five (45) days of mailing of the Notice Packet;

11. Order that any Class member who has not properly and timely requested exclusion from the WWPCL Class shall be bound by the Agreement when the Court issues a Final Order Approving Settlement;

12. Schedule a Fairness Hearing will be within approximately 90 to 120 days;

13. Order that any Motions, including but not limited to a Motion for Approval of Attorneys' Fees and Costs, a Motion for Approval of Named Plaintiff's Service Award, and a Joint Motion for Final Approval of Settlement, shall be filed with the Court no later than seven (7) days prior to the Fairness Hearing; and

14. Order that any Class Member or Collective Member who wishes to object in any way to the proposed Agreement must file and serve such written objections per the instructions set forth in the Notice Packet, which must be postmarked no later than forty-five (45) days after the mailing of the Notice Packet, together with copies of all papers in support of his or her position. The Notice Packet shall state that the Court will not consider objections of any Class Member or Collective Member who has not properly served copies of his or her objections on a timely basis.

(ECF No. 19-1, ¶ 2.2(A).)

## SETTLEMENT BACKGROUND

On September 15, 2020, Plaintiff filed her Complaint in this matter against Defendant, (ECF No. 1), alleging claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and under Wisconsin's Wage Payment and Collection Laws, Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq. ("WWPCL"). Plaintiff alleged that Defendant failed to include all forms of nondiscretionary compensation in all current and former hourly-paid, non-exempt employees' regular rates of pay for overtime calculation purposes, in violation of the FLSA and WWPCL. (ECF No. 1, ¶ 3; Declaration of Scott S. Luzi ("Luzi Decl."), ¶ 10.)

In December 2020, counsel for the parties began directly discussing settlement. (Luzi Decl., ¶ 11.) Since the inception of this case, Defendant has denied, and continues to deny, engaging in any wage and hour violations, including whether forms of compensation paid to Plaintiff and other hourly-paid, non-exempt employees were non-discretionary and not included in the regular rate for overtime calculation purposes. (*Id.*) Between approximately December 2020 and April 2021, counsel for the parties debated and analyzed their respective legal arguments and factual positions, and they concluded that the prospect of resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including extensive and additional written discovery, depositions, document review and production, and the filing of conditional certification, certification, decertification, and dispositive motions. (*Id.*)

During this time, counsel for the parties communicated directly and engaged in substantive arms-length settlement negotiations with each other regarding legal authority relevant to Plaintiff's cause(s) of action and Defendant's defenses. (Luzi Decl., ¶¶ 11-12.)

Counsel for the parties exchanged relevant documentation, including Plaintiff's payroll records, Plaintiff's time records, and class-related information, such as the payroll and overtime calculation data for hourly-paid, non-exempt employees employed between September 2017 and September 2020 and who worked in excess of forty (40) hours during a workweek and, during any workweek in which the employee worked in excess of forty (40) hours, received a form of non-discretionary compensation, including monetary bonuses, incentives, shift differentials, awards, and/or other rewards and payments. (*Id.*) Counsel for the parties created and exchanged detailed damages models and monetary settlement calculations, and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement. (*Id.*)

After the parties preliminarily agreed on settlement terms and conditions, counsel for the parties worked directly to draft and finalize the settlement agreement. (*Id.*) Ultimately, counsel for the parties believes the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above. (*Id.*)

## THE SETTLEMENT AGREEMENT

In April 2021 and May 2021, counsel for the parties drafted and finalized their settlement agreement – the ultimate result of which is attached to the parties' Joint Motion for Preliminary Settlement Approval as Exhibit A. (ECF No. 19-1.)

The primary terms and conditions of the Settlement Agreement are summarized below.

### A.    The FLSA Collective

For settlement purposes, the FLSA collective is defined as: All individuals who worked as hourly-paid, non-exempt employees at Defendant between September 15, 2017 and September 15, 2020, who worked in excess of forty (40) hours during a workweek and, during

any workweek in which the employee worked in excess of forty (40) hours, received a form of non-discretionary compensation, including monetary bonuses, incentives, shift differentials, awards, and/or other rewards and payments." (Exhibit A, p. 1.) "Collective Members" are those individuals "who file a Consent to Join Form within forty-five (45) days following service of the Notice Packet." (*Id.* at ¶ 1.2.)

### B. The Rule 23 Class

For settlement purposes, the Rule 23 WWPCL class is defined as: "All individuals who worked as hourly-paid, non-exempt employees at Defendant between September 15, 2018 and September 15, 2020, who worked in excess of forty (40) hours during a workweek and, during any workweek in which the employee worked in excess of forty (40) hours, received a form of non-discretionary compensation, including monetary bonuses, incentives, shift differentials, awards, and/or other rewards and payments." (Exhibit A, p. 2.) "Class Members" are those individuals "who do not affirmatively opt-out of the Settlement within forty-five (45) calendar days following service of the Notice Packet." (*Id.* at ¶ 1.1 (footnote omitted).)

### C. Summary of Settlement Agreement's Terms

*Payments to Class and Collective Members*

As settlement of this matter, Defendant has agreed to pay an amount not to exceed $16,551.80. (ECF No. 19-1, ¶ 1.10.) After deducting Court-approved attorneys' fees and costs to Plaintiff's counsel and a Court-approved Service Award to Plaintiff, the parties anticipate that the Net Settlement Fund will total approximately $3,551.80: a Class Fund of $2,368.05; and a Collective Fund of $1,184.03. (*Id.* at ¶ 3.1(C) & Exhibit B; Luzi Decl. ¶ 13.)

The parties anticipate that there are a total of 46 potential Class and Collective members. (ECF No. 19-1, ¶ 3.1(C) & Exhibit B.) For settlement purposes only, the parties reasonably

determined that the Class and Collective members were owed a total amount of approximately $2,368.05 in allegedly unpaid overtime wages during the time period between September 15, 2017 and September 15, 2020, as applicable. (*Id.* at ¶ 3.1(C)1.) Class members who do not exclude themselves, as set forth in the Settlement Agreement, will be paid their allocated share as stated in Exhibit B to the Settlement Agreement. (*Id.*) Likewise, Collective members who opt-in to the settlement, as set forth in the Settlement Agreement, will be paid their allocated share of reasonably approximated liquidated damages owed during the time period between September 15, 2018 and September 15, 2020. (*Id.* at ¶ 3.1(C)2 & Exhibit B; Luzi Decl. ¶ 13.)

*Notice to Settlement Class Members*

Within five (5) business days after the Court's Preliminary Approval Order, Defendant's Counsel will provide Class Counsel with the names, last known addresses, and phone numbers (if available) of Class and Collective members (the "Class List"). (ECF No. 19-1, ¶ 2.2(B)1.) Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Class Counsel will mail the Notice Packet to the Class and Collective members in a form substantially similar to what is made a part of this Settlement Agreement as Exhibit 1. (*Id.* at ¶ 2.2(B)2.) If any Notice Packets are returned by the postal service as undeliverable, Class Counsel will make best efforts in locating the individual. (*Id.* at ¶ 2.2(B)3.)

*Service Award to Plaintiff*

For the services she rendered to the Class and Collective members as part of this case, Defendant has agreed to pay Plaintiff a Service Award in the amount of $500.00 from the Gross Settlement Amount. (ECF No. 19-1, ¶ 3.3.) Plaintiff's Counsel will file a motion requesting that the Court approve the Service Award, which Defendant does not oppose. (*Id.*)

*Attorneys' Fees and Costs*

From the Gross Settlement Amount, Defendant has agreed to pay Plaintiff's counsel attorneys' fees and costs in the total amount of $12,500.00. (ECF No. 19-1, ¶ 3.2.) Class Counsel will file a Petition for Approval of Attorneys' Fees and Costs, which Defendant does not oppose. (*Id.*)

*Release of Claims*

Release By Collective Members: Upon the Court entering a Final Order Approving Settlement, and in exchange for the monetary consideration recited in this Agreement, Plaintiff hereby agrees to dismiss the FLSA Claim with prejudice, and each Collective Member, including Plaintiff, will release the Releasees from: any and all wage and hour claims that accrued while employed at Defendant as an hourly paid, non-exempt employee, relating back to the full extent of the applicable statute of limitations and continuing through the date of this Agreement, including, all state and federal claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the alleged failure to pay such wages when due pursuant to Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, et. seq. (ECF 19-1, ¶ 4.1.)

Release By Class Members: Upon the Court entering a Final Order Approving Settlement, and in exchange for the monetary consideration recited in this Agreement, each Class Member, including Plaintiff, will release the Releasees from: any and all wage and hour claims that accrued while employed at Defendant as an hourly paid, non-exempt employee, relating back to the full extent of the applicable statute of limitations and continuing through the date of this Agreement, including, all state claims for unpaid overtime wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses, and any other claims derived from the

alleged failure to pay such wages when due pursuant to Wisconsin's Wage Payment and Collection Laws ("WWPCL"), Wis. Stat. § 109.01 et seq., Wis. Stat. § 104.01 et seq., Wis. Stat. § 103.001 et seq., Wis. Admin. Code § DWD 274.01 et seq., and Wis. Admin. Code § DWD 272.001 et seq. (ECF 19-1, ¶ 4.2.)

## ARGUMENT

## I.  PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT IS APPROPRIATE

Resolution of class action litigation by settlement is favored. *Isby v. Bayh*, 75 F.3d 1191, 1996 (7th Cir. 1996). The standards for approval of the settlement of FLSA collective actions "track the considerations that the court must weigh for reviewing proposed class action settlements under Rule 23." *Smoot v. Wieser Bros. Gen. Contractors, Inc*., 2016 WL 1736498, at *6 (W.D. Wis. Apr. 29, 2016).

Under the FLSA, employees can bargain, waive, or modify their rights if the court approves of the parties' settlement as a fair and reasonable resolution of a bona fide dispute over alleged violations of the FLSA, and the Court then enters the settlement as a stipulated judgment. *Lynn's Food Store, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). An FLSA settlement requires court approval to be valid and enforceable. *Walton v. United Consumers Club, Inc*., 786 F.2d 303, 306 (7th Cir. 1986).

Under the WWPCL, a class action settlement may be approved under Rule 23 if: (1) the individual class members are afforded an opportunity to request exclusion from the settlement; (2) a hearing has been conducted; and (3) the court finds that the settlement is fair, reasonable, and adequate. Rule 23(e). In making this determination, courts "must weigh the probabilities of victory or defeat as indicated by the legal or factual situation presented and determine whether the compromise, taken as a whole, is in the best interests" of the class members. *United*

*Founders Life Ins. Co. v. Consumers Nat'l Life Ins. Co.,* 447 F.2d 647, 655 (7th Cir. 1971) (internal quotations omitted).

The Seventh Circuit considers the following factors when determining whether a proposed class action settlement is fair, adequate, and reasonable: (a) the strength of the plaintiff's case, weighed against the settlement offer; (b) the complexity, length, and expense of further litigation; (c) the presence or absence of collusion between the parties; (d) the opinion of competent counsel; (e) the reaction of class members to the proposal; and (f) the stage of proceedings and discovery completed. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873, 875 (7th Cir. 1998), *aff'd sub nom. California Pub. Employees' Ret. Sys. v. Felzen*, 525 U.S. 315 (1999)).

Ultimately, at the preliminary approval stage, the Court's task is to determine whether the proposed settlement is "within the range of possible approval" so as to warrant sending notice to class members and proceed with a fairness hearing. *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982).

Here, the parties' Settlement Agreement satisfies all of the requirements and factors articulated above and is therefore appropriate for preliminary approval.

### A.      The Strength of the Case Vis-à-Vis the Settlement Amount

The first settlement-approval factor is "the strength of plaintiffs' case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.* 463 F.3d 646, 653 (7th Cir. 2006). In this case, the parties have thoroughly investigated and analyzed Plaintiff's claims against Defendant under the FLSA and WWPCL, and while the parties nonetheless maintained a strong belief in their respective legal and factual positions and on the possibility of class and collective certification (and/or de-certification), they

recognized that the prospect of expeditious resolution outweighed the continued time, effort, expense, and risk of litigation for both parties, including depositions and extensive document review and production. The time and expense associated with discovery, briefing, and hearings on collective and class certification alone would have been substantial, further supporting the parties' decision to enter into settlement negotiations, resulting in the parties' Settlement Agreement. (Luzi Decl., ¶ 11.)

In order to fully and finally resolve this matter, Defendant has agreed to monetary compensation for Plaintiff and the Settlement Class members that fairly and adequately represents the alleged overtime wages actually owed to them, plus liquidated damages. Specifically, the parties anticipate that a total of 46 Class and Collective members will participate in the Net Settlement Fund, totaling approximately $3,551.80: a Class Fund of $2,368.05 and a Collective Fund of $1,184.03. (*Id.* at ¶ 3.1(C) & Exhibit B; Luzi Decl. ¶ 13.) The parties reasonably determined that the Class Members were owed a total amount of approximately $2,368.05 in allegedly unpaid overtime wages during the time period between September 15, 2018 and September 15, 2020. (*Id.* at ¶ 3.1(C)1.) Likewise, the parties reasonably determined that the Collective members who opt-in to the settlement, as set forth in the Settlement Agreement, will be paid their allocated share of reasonably approximated liquidated damages owed during the time period between September 15, 2018 and September 15, 2020. (*Id.* at ¶ 3.1(C)2 & Exhibit B; Luzi Decl. ¶ 13.)

Thus, the overall balance supports approval of the Settlement Agreement.

### B. The Complexity, Length, and Expense of Litigation

The complexity, expense, and length of continued litigation weigh in favor of approving this Settlement Agreement. As mentioned above, both parties acknowledge the continued time, effort, expense, and risk of litigation, including extensive document review and production and

depositions. Litigation of this matter through conditional certification, final certification and/or de-certification, dispositive motions, and ultimately trial would have required considerable time, effort, and expense for both sides. (Luzi Decl., ¶¶ 11-12.) With this in mind, from all parties' perspective, settlement is favored.

### C. The Absence of Fraud or Collusion in the Settlement

This case involves a bona fide dispute over whether Defendant violated the FLSA and WWPCL as alleged by Plaintiff. The ultimate resolution, embodied in the Settlement Agreement, was the result of months of arms-length negotiations between counsel for the parties between December 2020 and April 2021. (Luzi Decl., ¶¶ 11-12.) Given these considerations, it is clear that there was no fraud or collusion. The settlement will provide Plaintiff and the Settlement Class members with a fair recovery while eliminating the risks and costs both sides would bear if this litigation continued to a resolution on the merits.

### D. The Lack of Opposition to the Settlement

The parties are unaware of any opposition to the settlement at this time. (Luzi Decl., ¶ 15.)

### E. Counsel's Opinion

Counsel for the parties support the settlement. (Luzi Decl., ¶ 12.) As experienced practitioners in the area of wage and hour class and collective actions, the counsel for the parties recognized the uncertainty of proceeding through dispositive motions and trial, and they have sought a fair and equitable compromise to resolve this matter. Despite their divergent views regarding Plaintiff's allegations, counsel for the parties engaged in arms-length negotiations from December 2020 and April 2021 and ultimately reached a settlement embodied in the Agreement that they consider to be fair, reasonable, and adequate given all the considerations above. (*Id.* at ¶¶ 11-12.)

### F.     The Amount of Discovery and Stage of Proceedings

Between December 2020 and April 2021, counsel for the parties communicated, corresponded, and engaged in a thorough and substantive exchange of information relevant to Plaintiff's cause(s) of action and Defendant's defenses. (Luzi Decl., ¶¶ 11-12.) For example, counsel for the parties exchanged relevant documentation, including Plaintiff's payroll records, Plaintiff's time records, and class-related information, such as the payroll and overtime calculation data for hourly-paid, non-exempt employee between September 2017 and September 2020. (*Id.*) Counsel for the parties created and exchanged detailed damages models and monetary settlement calculations, and discussed other monetary and non-monetary terms and conditions of settlement, as well as the timelines, processes, and procedures of settlement. (*Id.*) After the parties preliminarily agreed on settlement terms and conditions, counsel for the parties worked directly to draft and finalize the settlement agreement. (*Id.*)

Over the course of the case, the parties have had ample time and information to evaluate the risks of continued litigation vis-à-vis settlement. (Luzi Decl., ¶¶ 11-12.) Additional discovery proceedings would not help to materially crystallize the parties' positions any further, and after exchanging monetary offers and preliminarily agreeing on settlement terms and conditions, counsel for the parties worked directly to draft and finalize the settlement agreement. (*Id.*) Ultimately, counsel for the parties believe the terms and conditions embodied in the Settlement Agreement are fair, reasonable, and adequate given all the considerations above. (*Id.*)

## II.     FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED CLASS SHOULD BE CERTIFIED

Rule 23(a) requires that, in order for a class to be certified, the following elements must be met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. In this case, all four elements of Rule 23(a) are met.

Additionally, Plaintiff must satisfy one of the elements of Rule 23(b). Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to the entire class predominate over individual claims and a class action is superior to other methods for fair and efficient adjudication. In this case, the elements of Rule 23(b)(3) are met.

### A.    The Numerosity Requirement of Rule 23(a)(1)

The numerosity requirement of Rule 23(a)(1) requires a showing that the number of members in the proposed class is so large as to make joinder impracticable. *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 663-4 (7th Cir. 2004). While there is no explicit cut-off for numerosity, the Seventh Circuit has found classes of forty (40) individuals sufficient. *See, e.g., Swanson v. Am. Consumer Indus., Inc.*, 415 F.2d 1326, 1333 n.9 (7th Cir. 1969).

This case meets the numerosity requirement of Rule 23(a)(1) because there are approximately 46 members of the Class and Collective. (ECF No. 19-1, ¶ 3.1.)

### B.    The Commonality Requirement of Rule 23(a)(2)

Rule 23(a)(2) requires that class members share a common question of law or fact. This element is satisfied when a common issue of law or fact is "capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *see also Suchanek v. Sturm Foods*, 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class

members, there is a common question."")); *Williams-Green v. J. Alexander's Rests., Inc*., 277 F.R.D. 374 (N.D. Ill. 2011) ("[Plaintiff] has demonstrated that her claims…arise from a common nucleus of fact based upon standardized conduct and, therefore, has satisfied the commonality requirement of Rule 23(a)(2).").

This case meets the requirement of Rule 23(a)(2) because Plaintiff and the Class members and Collective members have identical wage-and-hour claims arising under the same statutes—the FLSA and WWPCL—based upon similar allegedly unlawful pay practices applicable to the Class as a whole. (ECF No. 1, ¶ 3.)

### C. The Typicality Requirement of Rule 23(a)(3)

The typicality requirement of Rule 23(a)(3) is closely related to the question of commonality. *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992). The Seventh Circuit has held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (citations and internal quotation marks omitted); *see also De La Fuente v. Stokley-Van Camp, Inc*., 713 F.2d 225, 232 (7th Cir. 1983). Stated another way, the class representative's claims must have "the same essential characteristics" as the class members' claims. *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009). Further, typicality element of Rule 23(a)(3) focuses on the defendant's actions leading to the alleged violation and not on possible particularized defenses against certain individual class members. *Wagner v. NutraSweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996).

In this case, Plaintiff is a member of the Class and Collective that she seeks to represent, and the legal theories advanced by Plaintiff, (*see* ECF No. 1, ¶ 3), apply equally to her and the Class and Collective members. Because Plaintiff's claims involve the same legal theories and arise from the same alleged course of conduct that gives rise to the claims of the Settlement

Class members, the Rule 23(a)(3) typicality element has been satisfied.

### D.  The Adequacy of Representation Requirement of Rule 23(a)(4)

The adequacy of representation element under Rule 23(a)(4) consists of two parts: (1) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to those of the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013).

In this case, both considerations are met because Plaintiff and Plaintiff's counsel will provide fair and adequate protection for the interests of the Class and Collective as required by Rule 23(a)(4). Plaintiff understands the obligations of a class representative, and Plaintiff's counsel is experienced with complex federal wage and hour litigation by virtue of successfully representing numerous individuals in single-Plaintiff and multi-Plaintiff wage and hour actions. (Luzi Decl., ¶¶ 2-7.) Plaintiff also has no interests antagonistic to those of the Class and Collective. Plaintiff seeks, on behalf of herself and the Class and Collective members, monetary damages pursuant to the FLSA and WWPCL as a result of Defendant's alleged unlawful pay practices. Given the identity of claims, there is neither the potential for conflicting interests nor any antagonism between the interests of Plaintiff and the Class and Collective members.

### E.  The Predominance Requirement of Rule 23(b)(3)

Under Rule 23(b)(3), certification of the class is proper where questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. *See Chicago Teachers Union, Local No. 1 v. Bd. of Educ. Of Chi.*, 797 F.3d 426, 444 (7th Cir. 2015) ("Common issues of fact and law predominate in particular when adjudication of questions of liability common to the class will achieve economies of time and

expense."). To make this determination, the Court must consider the class members' interests in individually controlling the prosecution or defense of separate actions, the extent and nature of any litigation concerning the controversy already begun by or against class members, the desirability or undesirability of concentrating the litigation of the claims in the particular forum, and the likely difficulties in managing a class action. Rule 23(b)(3)(A)-(D).

The Seventh Circuit has summarized this standard by stating that, "class action treatment is appropriate and permitted by Rule 23 when judicial economy from the consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for a decision by a single judge or jury." *Mejdrech v. Met-Coil Sys. Corp.*, 319 F.3d 910, 911 (7th Cir. 2003). Put differently, is the putative class sufficiently cohesive to warrant adjudication by representation? *See, e.g., Blihovde*, 219 F.R.D. at 620 (*citing Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997)).

In this case, and while the Class and Collective members may have a theoretical interest in controlling their own legal claims, they also have an interest in resolving their claims efficiently. The proposed Settlement Agreement provides that efficiency. Indeed, the Seventh Circuit has held that a class action is an efficient and effective way to obtain relief for individual class members. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997).

Further, when challenging a uniform policy, as Plaintiff challenges Defendant's uniform compensation policies and practices in this case, the validity of those policies predominate over individual issues and class certification is appropriate. *Id*. (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 147 n. 20 (1982)). Individual inquiries into the application of that policy to an individual within the class will not supplant predominance. *Id*.

The Settlement Agreement resolves the parties' dispute(s) regarding Defendant's allegedly unlawful compensation policies and practices regarding compensating Class and Collective members for all work performed each work day and each workweek at an overtime rate of pay. Because Plaintiff has alleged that these compensation policies and practices were uniformly applied to all Class and Collective members in the State of Wisconsin, and because the parties' Settlement Agreement resolves their disputes over these practices, common issues predominate in this matter, and this element under Rule 23(b)(3) is met.

**F.      The Superiority Requirement of Rule 23(b)(3)**

The superiority requirement under Rule 23(b)(3) requires Courts to consider: (1) the interests of the class members in controlling the prosecution of their own claims; (2) the existence of other pending litigation related to the same controversy; (3) the desirability of concentrating the claims in one forum; and (4) the difficulty of managing the class.

In this case, there is no other related litigation pending, (Luzi Decl., ¶ 15), consolidating all the claims before this Court is efficient and desirable, and there will be no difficulties in managing this class action in light of the parties' settlement. *See Amchem Prods.*, 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.").

Finally, a class is the superior method for resolving this case because there is no prejudice to any Class and Collective member: any member who prefers to litigate his or her legal claim(s) separately may opt out of the Class (or not opt in to the Collective) during the Notice process. Class resolution is desirable in this case given the size of the Class and Collective and the nature of the alleged violations. Defendant's challenged compensation policies allegedly harmed each

Class and Collective member, but said members' individual interests in prosecuting these claims is limited by the relatively small monetary value of each individual claim, which also makes adjudication of individual claims inefficient and unlikely. Even so, to the extent that any Class and Collective member prefers to litigate his or her legal claim(s) separately, the Class notice mechanism provides him or her the opportunity to do so.

## III. FOR PURPOSES OF SETTLEMENT ONLY, THE PROPOSED COLLECTIVE SHOULD BE CERTIFIED

Courts have held that, where a Plaintiff satisfies Rule 23 standards for class certification, that Plaintiff also satisfies the standards for certification of a FLSA collective action. *See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013) ("[D]espite the difference between a collective action and a class action and the absence from the collective-action section of the Fair Labor Standards Act of the kind of detailed procedural provisions found in Rule 23, there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences.") (citing *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010)).

Accordingly, for settlement purposes only, the parties request that this Court certify an FLSA collective on behalf of the Settlement Class.

## IV. THE PARTIES' NOTICE PLAN

Within five (5) business days after the Court's Preliminary Approval Order, Defendant's Counsel will provide Class Counsel with the names, last known addresses, and phone numbers (if available) of Class and Collective members (the "Class List"). (ECF No. 19-1, ¶ 2.2(B)1.) Within fifteen (15) days of the Court's entry of the Preliminary Approval Order, Class Counsel will mail the Notice Packet to the Class and Collective members in a form substantially similar

to what is made a part of this Settlement Agreement as Exhibit 1. (*Id.* at ¶ 2.2(B)2.) If any Notice Packets are returned by the postal service as undeliverable, Class Counsel will make best efforts in locating the individual. (*Id.* at ¶ 2.2(B)3.)

## V. THE PARTIES' PROPOSED NOTICE PACKET AND MANNER OF DELIVERY ARE APPROPRIATE

In order to protect the rights of absent members of a Rule 23 class, the Court must provide the best notice practicable of the settlement to all class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 174-75 (1974). The Seventh Circuit has found that notice satisfies Rule 23 due process, and binds all members of the class, if it: (1) describes the essential terms of the settlement; (2) discloses any special benefits or incentives to the class representatives; (3) provides information regarding attorneys' fees; (4) indicates the time and place of the hearing to consider approval of the settlement and the method for objecting to and/or opting out of the settlement; (5) explains the procedures for allocating and distributing settlement funds; and (6) prominently displays the address of class counsel and the procedure for making inquiries. *See, e.g., Airline Stewards and Stewardesses Ass'n 550 v. Am. Airlines*, 455 F.2d 101, 108 (7th Cir. 1972) (holding that due process was satisfied by notice that explained the status of proceedings, significance of judicial approval of settlement, and opportunity to object at the hearing)). Likewise, "notice of FLSA claims must give potential class members enough information to make informed decisions about whether to participate." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989)).

Here, the parties' notice plan provides for Plaintiff's counsel to distribute the Notice Packet via U.S. Mail, which is attached to the Settlement Agreement as Exhibit A, to all Class and Collective members. The contents of the Notice Packet meet all of the six criteria set forth

above, clearly identifying the options available to Class and Collective members and comprehensively explaining the nature and mechanics of the settlement.

The proposed manner of delivery of the Notice Packet is also sufficient. The Notice will be sent via first class U.S. Mail to all Class and Collective members. If any Notice Packet is returned to Class Counsel as undeliverable, Class Counsel will take other appropriate steps to identify and mail the Notice to an alternative address for the respective Class and Collective member. (ECF No. 19-1, ¶ 2.2(B)(3).) *See, e.g., Burns v. Elrod,* 757 F.2d 151, 154 (7th Cir. 1985); *Eisen*, 417 U.S. at 177 ("It is beyond dispute that notice by first class mail ordinarily satisfies Rule 23(c)(2)'s requirement that class members receive the 'best notice practicable under the circumstances.'").

Accordingly, the parties' Notice Packet, which is attached to the Settlement Agreement as Exhibit A, as well as the manner of delivery to all Class and Collective members, complies with Rule 23 and due process, and the Notice Packet should be approved by this Court.

## VI. PLAINTIFF'S SERVICE AWARD

The Seventh Circuit has recognized that, in appropriate cases, class representatives may be entitled to incentive awards. *See Spicer v. Chi. Bd. Options Exch.*, 844 F. Supp. 1226, 1267 (N.D. Ill. 1993) (citing *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992)). The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended. *See Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998).

In this case and prior to the Fairness Hearing, Plaintiff will file a motion asking the Court to approve a Service Award of $500.00 for the services she rendered to the Class and Collective members as part of this case. (ECF No. 19-1, ¶ 3.3.) Defendant does not oppose Plaintiff's

Service Award. (*Id.*) Plaintiff's Service Award in an amount of $500.00 is reasonable, in line

with, and similar to other service awards approved by this District in multi-plaintiff FLSA

collective cases that have resolved for monetary amounts similar to the total monetary settlement

in this case. *See, e.g., Lee Stirmel v. S&C Electric Company*, Case No. 20-cv-347, ECF No. 44

(E.D. Wis. March 5, 2021) (Adelman, L.); *Nande Yegger v. TRN Milwaukee*, Case No. 20-cv-

144, ECF No. 21 (E.D. Wis. June 23, 2020) (Adelman, L.); *Cory Winter v. U.S. Paper Mills

Corp., et. al.*, Case No. 19-cv-657, ECF No. 41 (E.D. Wis. May 7, 2020) (Griesbach, J.); *David

Lee v. UL LLC,* Case No. 17-cv-1617, ECF No. 19 (E.D. Wis. November 25, 2019) (Griesbach,

J.); *Johnson v. National Technologies, Inc.*, No. 18-cv-462, ECF No. 57 (E.D. Wis., July 22,

2019) (Jones, J.); *Nicole Dietzen v. Community Loans of America, Inc.*, Case No. 2018-cv-818,

ECF No. 39 (E.D. Wis. May 15, 2019) (Griesbach, J.); *John Weninger v. General Mills

Operations, LLC*, Case No. 2018-cv-321, ECF No. 93 (E.D. Wis. April 18, 2019) (Stadtmueller,

J.); *Tracy Gerlach v. West Revenue Generation Services, et. al.*, Case No. 2018-cv-170, ECF No.

91 (E.D. Wis. January 3, 2019) (Griesbach, J.).

## VII.    PLAINTIFF'S COUNSEL'S ATTORNEYS' FEES AND COSTS

Attorneys' fees and costs are recoverable under the FLSA, 29 U.S.C. § 216(b), and under

the WWPCL, Wis. Stat. §109.03(6). Because of this, courts determine reasonable attorneys' fees

and costs by using the "lodestar" approach: calculating the reasonable hourly rate multiplied by

the hours reasonably expended. *Hensley v. Eckerhart*, 461 U.S. 424, 433-37; *Johnson v. GDF,

Inc.*, 668 F.3d 927, 929 (7th Cir. 2012); *Pickett v. Sheridan Health Care*, 664 F.3d 632, 640–43

(7th Cir. 2011); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 659 (7th Cir. 2007); *Uphoff*, 176

F.3d at 407; *Bankston v. Illinois*, 60 F.3d at 1255.

As a result of this litigation and in furtherance of its resolution, the proposed settlement

allocation provides Plaintiff's counsel attorneys' fees and costs in the total amount of $12,500.00. (ECF No. 19-1, ¶ 3.2.) This amount is *less* than Plaintiff's counsel's actual attorneys' fees and costs litigating and resolving this matter to date, which total approximately $13,360.00 and $402.50, respectively. (Luzi Decl., ¶ 14.) Plaintiff's counsel will continue expending post-settlement time and expense through the Fairness Hearing and the ultimate resolution of this matter, including: communicating and corresponding with Plaintiff, Defendant's counsel, Class members, and Collective members; sending the Notice via U.S. Mail to Class members and potential Collective members; drafting and filing Final Approval documents with the Court; attending the Fairness Hearing; and engaging in any post-Fairness Hearing activities and work, such as sending the settlement correspondence and settlement checks via U.S. Mail to members of the Class and Collective. (*Id.*)

Ultimately, Plaintiff's counsel believes that they have litigated this matter effectively and efficiently to date, and will continue to do so until the final conclusion of this matter. (*Id.*) Prior to the Fairness Hearing, Plaintiff's counsel will Motion this Court for approval of attorneys' fees and costs in the amount of $12,500.00.

## **CONCLUSION**

For all of the reasons herein, the parties respectfully request that this Court:

1.     Approve the parties' Settlement Agreement, (ECF No. 19-1), as a fair, reasonable, and adequate resolution of a bona fide dispute under the FLSA and the WWPCL;

2.     For settlement purposes only, certify a class action under Federal Rule of Civil Procedure 23;

3.     For settlement purposes only, certify a collective action pursuant to the FLSA;

4.     Appoint Plaintiff, Janet Dexter, as Class Representative;

5.     Appoint Plaintiff's Counsel, Walcheske & Luzi, LLC, as Class Counsel pursuant to Federal Rule of Civil Procedure 23(g);

6.      Approve the parties' Notice Packet, attached as Exhibit A to the Settlement Agreement, (ECF No. 19-1), for distribution to all Collective and Class members;

7.      Find that the Notice Packet to be sent to all Collective and Class members constitutes the best notice practicable under the circumstances, and constitutes valid, due, and sufficient notice to Collective and Class members in full compliance with the requirements of applicable law, including the Due Process Clause of the United States Constitution;

8.      Order that each Collective member who wishes to be included in the FLSA Collective must opt-in per the instructions set forth in the Notice Packet, and that their response must be postmarked within forty-five (45) days of mailing of the Notice Packet;

9.      Order that any Collective member who has properly and timely opted-in to the FLSA Collective shall be bound by the Agreement when the Court issues a Final Order Approving Settlement;

10.      Order that each Class member who wishes to be excluded from the WWPCL Class must opt-out per the instructions set forth in the Notice, and that their response must be postmarked within forty-five (45) days of mailing of the Notice Packet;

11.      Order that any Class member who has not properly and timely requested exclusion from the WWPCL Class shall be bound by the Agreement when the Court issues a Final Order Approving Settlement;

12.      Schedule a Fairness Hearing will be within approximately 90 to 120 days;

13.      Order that any Motions, including but not limited to a Motion for Approval of Attorneys' Fees and Costs, a Motion for Approval of Named Plaintiff's Service Award, and a Joint Motion for Final Approval of Settlement, shall be filed with the Court no later than seven (7) days prior to the Fairness Hearing; and

14.      Order that any Class Member or Collective Member who wishes to object in any way to the proposed Agreement must file and serve such written objections per the instructions set forth in the Notice Packet, which must be postmarked no later than forty-five (45) days after the mailing of the Notice Packet, together with copies of all papers in support of his or her position. The Notice Packet shall state that the Court will not consider objections of any Class Member or Collective Member who has not properly served copies of his or her objections on a timely basis.

(ECF No. 19-1, ¶ 2.2(A).)

Dated this 17th day of May, 2021

**_s/ Scott S. Luzi_**
Scott S. Luzi, SBN 1067405
WALCHESKE & LUZI, LLC
235 N. Executive Drive, Suite 240
Brookfield, Wisconsin 53005
Telephone: (262) 780-1953
Email: sluzi@walcheskeluzi.com

*Attorneys for Plaintiff*

**_s/ Anthony J. Steffek_**
Anthony J. Steffek, SBN 1053615
DAVIS & KUELTHAU, s.c.
318 Washington Street, Suite 300
Green Bay, Wisconsin 54301
Telephone: (920) 431-2237
Email: asteffek@dkattorneys.com

*Attorneys for Defendant*